IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:06-CR-0351** |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **MARCO LABOY-TORRES** | : | |

### MEMORANDUM

Presently before the court is defendant's motion to dismiss the indictment (Doc. 21), in which defendant alleges that his failure to report a prior Puerto Rican felony offense cannot be grounds for a charge of making false or fictitious statements to deceive a licensed firearms dealer pursuant to 18 U.S.C. § 922(a)(6). For the reasons that follow, the motion will be denied.

### I.    Factual Background

On October 18, 2006, defendant, Marco Laboy-Torres, was indicted by a grand jury. The indictment charges defendant with two counts of making false or fictitious statements to deceive a licensed firearms dealer in the sale or acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6).[1] (Doc. 1.) The government alleges,

---

[1] 18 U.S.C. § 922(a)(6) makes it unlawful:

for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

Id.

*inter alia*, that defendant represented to two firearms dealers that he had never been convicted of a felony when, in fact, he had been convicted of a felony drug offense in the Superior Court of Puerto Rico in 1999. (Doc. 1; see also Doc. 22 at 7.) According to the government, defendant's conviction in Puerto Rico was "material to the lawfulness" of his purchase of firearms because 18 U.S.C. § 922(g)(1) makes it unlawful for any person:

> who has been *convicted in any court* of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (emphasis added).

On February 6, 2007, defendant entered a plea of not guilty to each count in the indictment. (Doc. 10.) On May 21, 2007, defendant filed the instant motion, arguing that the phrase "convicted in any court," as contained in 18 U.S.C. § 922(g)(1), was not intended to include convictions in the courts of Puerto Rico. (Doc. 21.) The motion has been fully briefed and is ripe for disposition.

## II. Discussion

In Small v. United States, 544 U.S. 385 (2005), the United States Supreme Court held that a prior Japanese felony conviction could not serve as a predicate offense for purposes of a felon-in-possession prosecution because the phrase "convicted in any court," as contained in 18 U.S.C. § 922(g)(1), applies only to "domestic" convictions. Small, 544 U.S. at 387. In interpreting 18 U.S.C. § 922(g)(1), the Court focused on the presumption that Congress "intends its statutes to have

domestic, not extraterritorial application" and found nothing in the language of 18 U.S.C. § 922(g)(1) to suggest a Congressional intent to override that presumption. Small, 544 U.S. at 388-89, 391.  The Court also noted that foreign convictions differ from domestic convictions in several key respects.  First, foreign convictions may punish behavior that domestic laws would not, such as "engaging in economic conduct that our society might encourage."  Id. at 389 (citing selected laws of Cuba and the Russian Soviet Federated Socialist Republic).  Second, foreign and domestic convictions may differ markedly in the severity of punishment assigned to a particular offense.  Id. at 390 (citing provision of Singapore Vandalism Act which permits a term of imprisonment of up to three years for an act of vandalism). Finally, foreign convictions may occur in legal systems that are "inconsistent with an American understanding of fairness" because, for example, defendants are not afforded due process.  Id. (citing legal regimes in which "the testimony of one man equals that of two women").  Given these differences, the Court concluded that the goal of 18 U.S.C. § 922(g)(1) — to prevent dangerous individuals from owning firearms — is "somewhat less reliably" met when the predicate offense is a foreign conviction.  Small, 544 U.S. at 390.  However, the Court did not define what constitutes a "foreign conviction" for purposes of § 922(g)(1).

The question presented by the instant motion is whether a conviction in Puerto Rico should be considered domestic or foreign for purposes of 18 U.S.C.

§ 922(g)(1).[2]  Defendant argues that Puerto Rican convictions should be considered foreign because Puerto Rico is "viewed as an autonomous political entity" in other areas of the law.  (Doc. 22 at 6.)  For example, the First Circuit Court of Appeals has held that, for purposes of dormant commerce clause jurisprudence, Puerto Rico "has sufficient actual autonomy to justify treating it as a public entity distinct from Congress."  Trailer Marine Transport Corp. v. Rivera Vazquez, 977 F.2d 1, 8 (1st Cir. 1992).  Defendant also cites a number of other "indications consistent with a separate sovereignty," such as the tax treatment of Puerto Rican individuals and corporations and the existence of a Puerto Rican National Olympic Committee.  (See Doc. 22 at 6.)

   A review of the relationship between Puerto Rico and the United States reveals the flaws in defendant's arguments.  In 1952, the Puerto Rican Federal Relations Act made Puerto Rico a Commonwealth with its own constitution and "a complete local self-government in the internal affairs of the island."  United States v. Feliciano-Grafals, 309 F. Supp. 1292, 1296 (D.P.R. 1970); see also 48 U.S.C. §§ 731-916.  Pursuant to the Act, Puerto Rico also consented to have "its international relations and other aspects of its 'nationality' . . . administered by the United States" and to afford its citizens the rights and privileges of United States citizenship.  Feliciano-Grafals, 309 F. Supp. at 1296; Americana of Puerto Rico, Inc. v. Kaplus, 368 F.2d 431, 434 (3d Cir. 1966) (stating that Puerto Rican citizens are also

---

   [2] This is apparently an issue of first impression.

citizens of the United States). Accordingly, the people of Puerto Rico "do not exercise the full sovereignty of an independent nation." Id. at 435. Instead, Puerto Rico possesses "a measure of autonomy comparable to that possessed by the States." Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 594, 597(1976) (stating that the purpose of the Puerto Rican Federal Relations Act was "to accord to Puerto Rico the degree of autonomy and independence normally associated with States of the Union"); see also United States v. Acosta-Martinez, 252 F.3d 13, 18 (1st Cir. 2001) ("Congress maintains similar powers over Puerto Rico as it possesses over the federal states."). In fact, as early as 1953, courts began to observe that "although Puerto Rico is not a state in the federal Union, 'it would seem to have become a State within a common and accepted meaning of the word.'" United States v. Steele, 685 F.2d 793, 805 n.7 (3d Cir. 1982). Additionally, many courts have recognized that, under certain statutes, Puerto Rico "may fall within the meaning of the word 'State.'" Americana, 368 F.2d at 435; see also Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 499 (1988) (treating Puerto Rico the same as a state for purposes of the Supremacy Clause); Steele, 685 F.2d at 804-05 (holding that Puerto Rico is a state within the meaning of 18 U.S.C. § 1952, which prohibits interstate and foreign travel in the aid of racketeering enterprises); United States v. Lopez Andino, 831 F.2d 1164, 1168 (1st Cir. 1987) ("Puerto Rico is to be treated as a state for purposes of the double jeopardy clause."); Cordova & Simonpietri Ins. Agency Inc. v. Chase

Manhattan Bank N.A., 649 F.2d 36, 38 (1st Cir. 1981) (holding that "Puerto Rico is to be treated like a state" for purposes of the Sherman Antitrust Act).

Although the United States Supreme Court has recognized that "Puerto Rico occupies a relationship to the United States that has no parallel," neither the Court nor Congress has suggested that Puerto Rico should not be considered part of the United States for purposes of predicate offenses in our criminal justice system. Flores de Otero, 426 U.S. at 596. In fact, the United States Court of Appeals for the Third Circuit has rejected the contention that when "Puerto Rico became a commonwealth its courts ceased to be within our system of government." Americana, 368 F.2d at 438-39 (holding that Puerto Rican judgments are entitled to full faith and credit); see also Iberia Foods Corp. v. Romeo, 150 F.3d 298, 300 (3d Cir. 1998) ("Puerto Rico is considered part of the 'United States' for the purpose of federal trademark law.").

Several circuit courts have expressly held that Puerto Rican convictions are predicate offenses within the ambit of the United States Sentencing Guidelines. In United States v. Cirino, 419 F.3d 1001 (9th Cir. 2005), the defendant argued that his prior Puerto Rican felony offense could not be considered a predicate conviction of a crime of violence "under federal or state law" for purposes of the Sentencing Guidelines' career offender designation. Id. at 1002; see also U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) and § 4B1.2(a) (2006). Citing the numerous contexts in which Puerto Rico is considered a state for purposes of legal analysis, the United States Court of Appeals for the Ninth Circuit held that Puerto Rico could be

considered the equivalent of a state for purposes of § 4B1.1(a) of the Guidelines and that Puerto Rican convictions could be deemed predicate offenses for purposes of the career offender designation. Cirino, 419 F.3d at 1003-05; see also United States v. Torres-Rosa, 209 F.3d 4, 7-8 (1st Cir. 2000) (rejecting defendant's argument that Puerto Rican convictions were not predicate offenses for purposes of career offender designation); United States v. Morales-Diaz, 925 F.2d 535, 540 (1st Cir. 1991) (same, reasoning that holding otherwise would "completely ignore[] the body of case law recognizing that Congress has accorded the Commonwealth of Puerto Rico 'the degree of autonomy and independence normally associated with States of the Union.'").[3]

The court finds that the relationship between Puerto Rico and the United States weighs heavily in favor of a conclusion that Puerto Rican convictions should be considered domestic for purposes of § 922(g)(1). In addition, the court finds nothing to suggest that Puerto Rican convictions exhibit any of the characteristics

---

[3] The court is cognizant of the holding in United States v. Diaz, 712 F.2d 36 (2d Cir. 1983), wherein the Second Circuit Court of Appeals concluded that a Puerto Rican conviction could not serve as a predicate offense for purposes of 18 U.S.C. App. § 1202(a)(1) (repealed 1986), which made it unlawful for anyone who had "been convicted by a court of the United States or of a state or a political subdivision thereof of a felony" to possess a firearm. The Diaz court held that the Superior Court of Puerto Rico was a court "of the commonwealth and not of a 'State or any political subdivision thereof.'" 712 F.2d at 37. However, the language of 18 U.S.C. § 922(g)(1), the statute at issue in the instant case, is much broader than that considered by the Diaz court. In addition, the Diaz court does not appear to have examined the policy considerations that have led numerous courts to conclude that Puerto Rico is now appropriately considered to be the equivalent of a state in a variety of more recent statutory contexts.

that prompted the Small court to eliminate foreign convictions from the grasp of § 922(g)(1).  See 544 U.S. at 389-90.  For example, Puerto Rican criminal laws do not differ markedly in terms of scope or severity of punishment from the criminal laws of the United States, and Puerto Rican defendants are afforded the same due process protections as defendants in the United States.  Americana, 368 F.2d at 434-35 (concluding that with United States citizenship comes the attendant protections of the Due Process Clause); see also Cirino, 419 F.3d at 1004 (noting that criminal defendants in Puerto Rican courts are afforded nearly identical "procedural protections" as criminal defendants in the United States and are permitted to raise habeas corpus challenges to Puerto Rican convictions that they believe to violate the United States Constitution).  Thus, the court finds that Puerto Rican convictions can be reliably used to prevent dangerous individuals from owning firearms and are properly considered domestic for purposes of § 922(g)(1).

### III. Conclusion

For the foregoing reasons, defendant's motion to dismiss the indictment (Doc. 21) will be denied.  An appropriate order will issue.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     July 24, 2007

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:06-CR-0351** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **MARCO LABOY-TORRES** | : | |

## <u>ORDER</u>

AND NOW, this 24th day of July, 2007, upon consideration of defendant's motion to dismiss the indictment (Doc. 21), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 21) is DENIED.

   S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge